**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald R Nowak, | No. CV-13-08232-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| USVETS Incorporated, | |
| Defendant. | |

Defendant U.S. Veterans Initiative has filed a motion to dismiss Plaintiff Ronald Nowak's complaint with prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, to compel arbitration. Doc. 24. The motion is fully briefed and no party has requested oral argument. For the reasons that follow, the Court will grant the motion, dismiss this action, and compel arbitration.

**I.    Background.**

Plaintiff was employed by Defendant between January 16, 2010 and January 26, 2011. Doc. 1, ¶¶ 11, 39. Plaintiff alleges that in October 2010 he "became aware of disparate treatment of a female employee based on her race." *Id.*, ¶ 19. He contends that his "supervisor regularly made inappropriate comments in the workplace about women based on their sex, and minorities and foreigners based on their race and national origin." *Id.*, ¶ 25. Plaintiff further alleges that he "met with the site director and expressed his concerns about the jokes and comments" in November 2010. *Id.*, ¶ 29. After the meeting, Plaintiff contacted the EEOC and filed a complaint. *Id.*, ¶¶ 31-32. Upon receiving notification of the EEOC complaint, Plaintiff asserts that Defendant "began targeting [him] for termination and continued targeting [him] for termination." *Id*, ¶ 34.

On November 16, 2010, Plaintiff attended a meeting with his supervisor and site director during which he alleges that both individuals "berated, threatened, harassed, and chastised [Plaintiff] for contacting the EEOC[.]" *Id.*, ¶ 36. After this meeting, Plaintiff suffered heart palpitations and sought treatment at a local hospital. *Id.*, ¶¶ 37-38.

Plaintiff again met with the site director and "one of defendant's top executives" on January 22, 2011, and contends that he was told that he "would be unable to continue working for the [D]efendant if [he] continued to pursue his EEOC complaint" (*id.*, ¶ 42), and that the executive "repeatedly urged" him to abandon the complaint (*id.*, ¶ 43). Plaintiff was placed on suspension during the meeting and was terminated four days later on January 26, 2011. *Id.*, ¶¶ 45-46. Plaintiff alleges that his termination was "retaliation for complaints about disparate and discriminatory treatment of co-workers based on national origin" in violation of Title VII of the Civil Rights Act of 1964. *Id.*, ¶ 61. Defendant has moved to dismiss this action or, in the alternative, compel arbitration on the ground that its Employee Handbook, which Plaintiff signed, "requires mandatory binding arbitration for all employees to resolve all employment-related disputes." Doc. 24 at 2.

**II.      Legal Standard.**

Under the Federal Arbitration Act, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2; *see, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-19 (2001) (holding that FAA applies to employment contracts except those of transportation workers) (citing 9 U.S.C. §§ 1-2); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994), *cert. dismissed*, 515 U.S. 1187 (1995). "Although [a] contract provides that [state] law will govern the contract's construction, the scope of the arbitration clause is governed by federal law." *Tracer Research Corp*, 42 F.3d at 1294 (citing

*Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir. 1983)); *see Circuit City Stores*, 279 F.3d at 892 (holding that FAA "not only placed arbitration agreements on equal footing with other contracts, but established . . . a federal common law of arbitrability which preempts state law"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("Federal substantive law governs the question of arbitrability."); *Chiron Corp.*, 207 F.3d at 1130-31 (holding that "district court correctly found that the federal law of arbitrability under the FAA governs the allocation of authority between courts and arbitrators" despite arbitration agreement's choice-of-law provision).[1]

"Notwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Tracer Research Corp*, 42 F.3d at 1294 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *see French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 908 (9th Cir. 1986). Where the arbitrability of a dispute is in question, a court must look to the terms of the contract. *See Chiron Corp.*, 207 F.3d at 1130. "'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Simula*, 175 F.3d at 719 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)); *see French*, 784 F.2d at 908.

A court "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency [and] the [FAA] '*requires* piecemeal resolution when necessary to give effect to an arbitration agreement.'" *Tracer Research Corp*, 42 F.3d at 1294 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25) (emphasis in original). "[T]he judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate[.]" *United Steelworkers*, 363 U.S. at 582. "The court's role under the [FAA]

---

[1] Though "'courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions,' general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law may operate to invalidate arbitration agreements." *Circuit City Stores*, 279 F.3d at 892 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) (emphasis in original).

1  is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if
2  it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207
3  F.3d at 1130 (citing *Simula*, 175 F.3d at 719-20; *Republic of Nicar. v. Standard Fruit Co.*,
4  937 F.2d 469, 477-78 (9th Cir. 1991)).

**III.    Analysis.**

The arbitration provision in this case states that "arbitration shall be the exclusive method for resolving any employment related dispute, and both [Defendant] and the employee are giving up any right that they might otherwise have to have a judge or jury decide any such employment related dispute." Doc. 24 at. 5. Plaintiff does not dispute that he signed the Employee Handbook. He argues, however, that he "had no part in drafting the purported arbitration agreement," "no opportunity to negotiate the terms or existence of the arbitration agreement," and that it was presented to him on a "take-it-or-leave-it" basis. Doc. 25 at 2. He argues that the arbitration agreement is not enforceable.

**A.    Choice of Law.**

Plaintiff contends that California law governs the arbitration agreement because the Employee Handbook states that disputes "shall be submitted and resolved by final and binding arbitration as provided for by the California Arbitration Act, California Code of Civil Procedure, Section 1280, *et seq.*" *Id.* at 3. He cites *Engalla v. Permanente Medical Group*, 938 P.2d, 903, 915 (Cal. 1997), for the proposition that "[w]hen 'California law is expressly incorporated into the agreement in question,' it 'governs the adjudication of any disputes arising from that agreement.'" *Id.* Defendant rejoins that the "Agreement is silent as to substantive law," and that Arizona's choice of law rules therefore apply. Doc. 26 at 2.

No choice of law provision appears in the Employee Handbook. The Court must therefore conduct a choice of law analysis. "A federal court ordinarily applies the choice-of-law rules of the state in which it sits." *Consul Ltd. v. Solide Enter. Inc.*, 802 F.3d 1143, 1146 (9th Cir. 1986) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981)). Because this Court sits in Arizona, it must apply Arizona's choice-of-law

rules. Arizona has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *See Bates v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988); *Garcia v. General Motors Corp.*, 990 P.2d 1069, 1075-76 (Ariz. Ct. App. 1999). Under this test, the law of the state that has the most significant relationship to an issue will apply to that issue. *Id.*

Arizona clearly has the most significant relationship to the parties and issues in this action. Plaintiff and Defendant are Arizona residents. Plaintiff was employed by Defendant in Arizona. All acts relevant to this action occurred in Arizona. Moreover, Plaintiff's cited authority is inapposite. The *Engalla* court held that California law was applicable because the parties in that case conceded that it was governed by California law. 938 P.2d at 915. The Court will apply Arizona law to the Employment Handbook.

**B.      Enforceability of the Arbitration Agreement.**

**1.      Waiver.**

Plaintiff argues that Defendant "waived arbitration through bad faith, willful misconduct, and express and implied repudiation." Doc. 25 at 10. Under Arizona law, "[a]n arbitration provision is waived by conduct inconsistent with the use of the arbitration remedy; in other words, conduct that shows an intent not to arbitrate." *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365, 1370 (Ariz. Ct. App. 1994). Examples of such conduct include "preventing arbitration, making arbitration impossible, proceeding at all times in disregard of the arbitration clause, expressly agreeing to waive arbitration, or unreasonable delay." *Id.* (citing *EFC Dev. Corp. v. F.F. Baugh Plumbing & Heating, Inc.*, 540 P.2d 185, 188 (Ariz. 1975)). Plaintiff has not argued that Defendant took any such actions. Rather, Plaintiff points to language in the Employee Handbook stating that the arbitration provisions will not prevent an employee from filing an EEOC charge and that no action will be taken against an employee that reports or opposes unlawful discrimination. Whether Defendant violated these policies has no bearing on the issue of whether it has waived the arbitration provision. These alleged violations can be addressed in arbitration. The Court cannot conclude that Defendant has waived the

arbitration provision of the Employee Handbook.

### 2. Unconscionability.

Plaintiff argues that the arbitration provision is procedurally and substantively unconscionable. Doc. 25 at 10. Procedural unconscionability is "concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts . . . that mean bargaining did not proceed as it should." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 57-58 (Ariz. 1995). The Court considers various factors affecting "the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, [and] whether the terms were explained to the weaker party." *Id.* at 57 (quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976)).

Plaintiff focuses on the fact that "[D]efendant clearly drafted the arbitration agreement," and that the agreement was a "take-it-or-leave-it" proposition. Doc. 25 at 11. But these allegations, without more, are not sufficient to demonstrate procedural unconscionability. *See EEOC v. Cheesecake Factory, Inc.*, CV 08-1207-PHX-NVW, 2009 WL 1259359 at *3 (D. Ariz. May 6, 2009) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)) ("Mere inequality in bargaining power is not sufficient to invalidate an arbitration agreement."); *Phoenix Baptist Hosp. & Medical Center, Inc. v. Aiken*, 877 P.2d 1345, 1349 (Ariz. 1994) ("[T]hat a contract is one of adhesion does not, of itself, determine its enforceability."). Plaintiff does not contend that the terms were not explained to him, he was deceived, he was pressured to sign, or he did not have a choice to accept the employment.

Contracts are substantively unconscionable when they are "so one-sided as to oppress or unfairly surprise an innocent party." *Maxwell*, 907 P.2d at 58. Substantive unconscionability is determined as of the time when the contract was made. A.R.S. § 47-2302 (2009); *Maxwell*, 907 P.2d at 53. Plaintiff does not argue that the Employee Handbook is one-sided or oppressive or that he has been unfairly surprised. The Court

therefore cannot conclude that the arbitration provision is substantively unconscionable.[2]

## C. Conclusion.

Plaintiff has not shown that the arbitration provision in the Employee Handbook was waived by Defendant or is unconscionable. There is no dispute that Plaintiff signed the Employee Handbook. The Court accordingly finds that a valid arbitration agreement exists. Because the arbitration provision provides for mandatory arbitration of "any employment related dispute" (Doc. 24 at 5), Plaintiff's Title VII retaliation claim is clearly covered. The Court will grant Defendant's motions to dismiss and to compel arbitration.

## IV. Request for Attorney's Fees.

Defendant seeks to recover its attorneys' fees, but has not complied with Local Rule 54.2, which sets forth the requirements for motions for attorney's fees. Defendant has not discussed any of the necessary factors such as eligibility, entitlement, or reasonableness, nor provided any supporting documentation. The Court will deny the request for attorney's fees.

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 24) is **granted**.

2. Defendant's motion to compel arbitration (Doc. 24) is **granted**. The parties shall proceed to arbitration in accordance with the terms of the Employee Handbook.

3. Defendant's request for attorney's fees is **denied**.

4. The Clerk is directed **terminate** this action.

Dated this 1st day of April, 2014.

_____
David G. Campbell
United States District Judge

---

[2] Plaintiff also raises arguments about the statute of limitations. Doc. 25 at 14. This argument is unrelated to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. The Court will not consider this argument.

- 7 -